IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SAMUEL ALBERTO RECINOS MOLINA,    )
                                  )
            Petitioner,           )
                                  )
    v.                            )    1:26-cv-706 (LMB/WBP)
                                  )
TODD LYONS, et al.,               )
                                  )
            Respondents.          )

ORDER

Petitioner Samuel Alberto Recinos Molina ("Molina"), a native and citizen of Guatemala,

has filed a two-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in

which he asserts that he has been illegally detained by the U.S. Department of Homeland

Security's ("DHS") Immigration and Customs Enforcement ("ICE") agency since March 11,

2026. Specifically, he alleges that his continued detention violates his due process rights (Count

I) and the Immigration and Nationality Act (Count II).

Molina is currently detained at the Farmville Detention Center, which is within the

Court's jurisdiction and the basis upon which he is suing Jeffrey Crawford, the warden of the

Farmville Detention Center. Molina has also sued Todd Lyons, the Acting Director of ICE;

Markwayne Mullin, the DHS Secretary; and Todd Blanche, the Acting Attorney General

(collectively, "the federal respondents").[1] For the reasons discussed in this Order, the Court

finds that the process the federal respondents used to revoke Molina's parole violated the Fifth

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Attorney General Blanche and
Secretary Mullin have automatically replaced their predecessors.

Amendment. Accordingly, Molina's Petition will be granted as to Count I, and the federal respondents will be ordered to release him from custody immediately.

I.

The following facts are undisputed. On December 3, 2016, Molina, who was 11 years old at the time, and his mother applied for admission into the United States at the San Ysidro Port of Entry. [Dkt. No. 10-1] at 25. During her interview with a Customs and Border Protection officer, Molina's mother indicated that they fled Guatemala because they had been threatened by the Mara gang. Id. at 25–26. She also explained that she paid 80,000 quetzals[2] to a smuggler named El Paisa, who provided Molina and his mother with counterfeit Guatemalan passports and non-immigrant visas and arranged for their transportation to the San Ysidro Port of Entry. Id. at 26. On December 4, 2016, Molina was issued a Notice to Appear, which charged him with being subject to removal under § 212(a)(6)(C)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act. Id. at 10. On December 5, 2016, Molina was released into the United States. Id. at 22–23. The document authorizing his release stated: "You have been released from service custody pending a final decision in your exclusion/deportation hearing." Id. at 22. The document also indicated that Molina was being paroled into the United States pursuant to 8 C.F.R. § 212.5. Id. at 23.

On October 18, 2017, Molina's father filed an I-589, Application for Asylum and Withholding of Removal, and Molina was a "rider" on that application. Id. at 13; [Dkt. No. 8-1] at ¶ 9. By an order dated March 31, 2022, an Immigration Judge denied Molina's father's claims for relief and ordered that Molina—along with his mother, father, and brother—be removed to

---

[2] 80,000 quetzals equates to approximately $10,500.

Guatemala. [Dkt. No. 10-1] at 21. On April 21, 2022, Molina's father filed an appeal, which is still pending before the Board of Immigration Appeals ("BIA").[3] [Dkt. No. 8-1] at ¶ 11.

On March 11, 2026, Molina was detained by ICE officers. The ICE records available to the Court describe the encounter as follows:

> On March 11, 2026, ERO Washington Criminal Alien Program responded to a call from United States Park Rangers regarding a traffic stop involving [a third party]. Immigration record checks determined that [the third party] was present in the country without status. Upon arrival, officers also encountered Recinos Molina in the vehicle at the intersection of Sudley Road and Vandor Lane in Manassas, Virginia.
>
> Deportation Officers Bates, Hiligh, and Vandermast identified themselves as immigration officers to Recinos Molina while wearing high visibility markings. Recinos Molina admitted he was a citizen of Guatemala and stated he was unaware of his immigration status or proceedings because his mother handles all matters related to his immigration process. Immigration checks, including Mobile Fortify and a call to the [Law Enforcement Support Center], revealed that Recinos Molina is subject to a final order of removal by an immigration judge. Deportation Officer Vandermast advised Recinos Molina that he was under arrest and turned him over to Deportation Officers Luiggi and Marasco, who transported him to the Washington Field Office for processing without further incident.

[Dkt. No. 10-1] at 31. There is no indication in the record before the Court as to why the vehicle was stopped by U.S. Park Rangers. Moreover, there is absolutely no evidence in the record indicating that Molina has committed any crime or violated any condition of his release.

Molina filed his Petition on March 13, 2026. [Dkt. No. 1]. The Court subsequently entered an Order requiring that he not "be removed or transferred from this district for any reason without this Court's permission" and directing the federal respondents to file a responsive pleading. [Dkt. No. 2]. In response, the federal respondents filed an opposition to the Petition contending that Molina has been detained pursuant to 8 U.S.C. § 1225(b)(2). [Dkt. No. 6].

---

[3] As of April 6, 2026, the Executive Office for Immigration Review's records indicate that Molina's brief was received by the BIA on October 27, 2022, that the BIA never received a brief from DHS, and that the appeal filed on April 20, 2022 remains pending.

3

Additionally, pursuant to this Court's March 27, 2026 Order, [Dkt. No. 9], the federal respondents provided the Court with several documents relating to Molina's December 5, 2016 release into the United States and March 11, 2026 detention. [Dkt. No. 10].

## II.

The central question posed in Molina's Petition is whether his continued detention violates the Fifth Amendment. In Pineda-Berrios v. Lyons, the Court analyzed the procedures the federal respondents used to revoke a noncitizen's parole under Mathews v. Eldridge, 424 U.S. 319, 335 (1976), and concluded that the unilateral revocation of the noncitizen's parole without "individualized consideration" and an "opportunity to be heard" deprived him of his due process rights. 2026 WL 384159, at *5. That same analysis applies here.

First, Molina has a significant liberty interest in remaining out of custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). In the parole context, "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." Morrissey v. Brewer, 408 U.S. 471, 482 (1972). Subject to the conditions of parole, a parolee "is free to be with family and friends and to form the other enduring attachments of normal life." Id.

Second, the procedures used to revoke Molina's parole erroneously deprived him of his liberty interest in remaining out of custody. When ICE officers encountered Molina on March 11, 2026, they purportedly conducted "[i]mmigration checks, including Mobile Fortify and a call to the [Law Enforcement Support Center]," which apparently revealed that Molina was "subject to a final order of removal by an immigration judge." [Dkt. No. 10-1] at 31. On that basis, "Deportation Officer Vandermast advised Recinos Molina that he was under arrest," and it was

4

recommended that Molina be "held in ICE custody pending his removal from the United States." Id. at 30–31, 33. Even a cursory review of Molina's immigration records reveals that the ICE officers did not have any legitimate reason for detaining Molina on March 11, 2026. Specifically, it is astonishingly clear from the record that the removal order entered against Molina on March 31, 2022 is not yet final because the appeal remains pending before the BIA. Dekoladenu v. Gonzales, 459 F.3d 500, 507 n.6 (4th Cir. 2006) ("An order of removal does not become final until the BIA has decided the appeal or the time for appealing has expired." (citing 8 U.S.C. § 1101(a)(47)(B))). In fact, the same record detailing ICE's encounter with Molina and recommending detention pending his removal from the United States indicates that "Molina filed a timely appeal of the removal order with the Board" and that "the appeal is still pending." [Dkt. No. 10-1] at 31–32. This error is particularly egregious given that the ICE officers' incorrect reading of Molina's immigration file resulted in a 27-day period of unlawful detention. For these reasons, it is easy to see how any additional procedures would be valuable where, as here, the only procedure required for the deprivation of Molina's liberty appears to have been an erroneous reading of Molina's immigration file and an unreviewable decision by an agency official subject to no formal procedures.

Third, the federal respondents' interest in detaining Molina without any semblance of due process is nonexistent. Of course, they have "no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by . . . alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017). And although the federal respondents have a "weighty" "interest in efficient administration of the immigration laws," Landon v. Plasencia, 459 U.S. 21, 34 (1982), they "remain subject to an obligation to 'effectuate [Molina's] detention in a manner that comports with due process,'" Abadin v. Noem, 2026 WL 217148, at *4

(W.D. Wash. Jan. 28, 2026) (citation omitted).  Nothing in this record explains why the federal respondents are "unable to efficiently enforce the immigration laws . . . while also affording individuals with their 'core' due process right: 'notice and an opportunity to be heard.'"  Make the Rd. N.Y. v. Noem, 2025 WL 2494908, at *19 (D.D.C. Aug. 29, 2025) (quoting LaChance v. Erickson, 522 U.S. 262, 266 (1998)).

In sum, although the federal respondents have discretion to release a noncitizen on parole, that does not mean they can revoke that parole on a mere whim and an erroneous review of the record, which is what has happened in this case.  Accordingly, Molina's continued detention violates the Due Process Clause, and he must be released from custody immediately.

III.

For all the reasons stated above, Molina's Petition, [Dkt. No. 1], is GRANTED as to Count I, and it is hereby

ORDERED that the federal respondents release Molina from custody with all his personal property subject to the conditions of his preexisting parole no later than 4:00 p.m. on April 7, 2026; and it is further

ORDERED that the federal respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Molina unless (1) he commits a violation of any federal, state, or local law; (2) he fails to comply with the conditions of parole; or (3) his parole has been lawfully revoked in a manner consistent with 8 C.F.R. § 212.5 and the Due Process Clause.

The Clerk is directed to enter judgment in Molina's favor pursuant to Federal Rule of Civil Procedure 58, forward a copy of this Order to counsel of record, and close this civil action.

Entered this 6 day of April, 2026.

Alexandria, Virginia

_____/s/_____
Leonie M. Brinkema
United States District Judge

6